**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**


**GRETCHEN B. MARSZALK,**

     **Plaintiff,**

**vs.**                           **CASE NO. 3:05cv66-MCR/WCS**

**JO ANNE B. BARNHART,
Commissioner of Social Security,**

     **Defendant.**

_____/


## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and local rule 72.2(D).  It is recommended that the decision of the Commissioner be reversed and remanded.

**Procedural status of the case**

Plaintiff, Gretchen B. Marszalk, and her husband, over a period of many years, operated a business, CMI Business Services, Inc.  The business provided stock information by means of a newsletter to subscribers.  Both worked in this corporation, but at times one or the other devoted more time to the work.  Plaintiff was and is President of the corporation, and owns 67% of the stock.  The business operates from

Plaintiff's home without other employees.  Plaintiff asserts that she took early retirement from her work in this family corporation in March, 2001, leaving the work to be done primarily by her husband.

The issue presented is whether Plaintiff is entitled to payment of Social Security retirement benefits for the period from March, 2001, through September, 2003.  Plaintiff was 62 years, 7 months, of age in March, 2001.  R. 29.  Her "full" retirement age, 65 years, 2 months, was reached in October, 2003, after which her retirement pay is not subject to the excess earnings rule.  *Id.* and R. 23.

The Administrative Law Judge applied the annual retirement test and other provisions set forth in 20 C.F.R. §§ 404.435(d), 404.446, and 404.447.  R. 29.  During 2001, 2002, and 2003, the years in question, a person who sought early retirement could have earnings up to $10,680, $11,280, and $11,520, respectively, without losing any retirement pay.  R. 23.  "Where earnings exceed the statutory amounts during the same years, deductions were supposed to be imposed at the rate of one dollar of benefits for each two dollar[s] of earnings in excess of these amounts until the reduction was fully effectuated."  *Id.*

The Administrative Law Judge found that after March, 2001, Plaintiff provided "substantial services" to this family business.  R. 29.  It was further found that Plaintiff had not rebutted the presumption of §§ 404.429(d) and 404.435(e) to show that the Commissioner's retroactive reallocation of income to Plaintiff and her husband in equal shares was unreasonable, and thus, found that Plaintiff's retirement benefits were properly withheld for this period.  *Id.*  For the year 2001, therefore, the total earnings from the corporation were found to be about $45,000, and one half of this ($22,500) was

allocated to Plaintiff.  R. 18.  This substantially exceeded the limit of $10,680 for that year.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted).

The Commissioner's legal conclusions are "not presumed valid."  Martin v. Sullivan, 894 F.2d at 1529.  "The Secretary's failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal."  Id., citations omitted.

**Legal standards governing the substantive claim**

This case is governed by Martin v. Sullivan, *supra*, adopted by the Commissioner in Social Security Ruling 91-1C, attached as exhibit a to document 18.  The court noted

that there is a distinction between an individual who receives wages and an individual

who receives income from self-employment:

> If a qualified applicant continues to receive employment income, then the
> Act authorizes the Secretary to impose deductions from retirement
> benefits in order to offset earnings in excess of statutory limits.  42 U.S.C.
> § 403(b) (Supp. II 1984).

> The Act provides that deductions, based on a qualified individual's wages
> or self-employment income, shall be made from any payment to which an
> individual is entitled until the total of the deductions equals the individual's
> benefit for any month that he is charged with excess earnings.
> Deductions are determined by applying the "annual earnings test."   20
> C.F.R. § 404.415 (1985).  This test applies to two categories of income
> recipients:  wage earners and self-employed individuals.  In determining
> the entitlement of individuals in these two classifications during their initial
> or "grace year" of retirement, the Secretary must ascertain that the
> self-employed applicant does not continue to provide substantial services
> to his business, while the wage-earning applicant is restricted in the
> amount of his monthly earnings.  20 C.F.R. §§ 404.430, 404.435(c) & (d),
> 404.446 (1985).

Martin v. Sullivan, 894 F.2d at 1530-1531 (footnotes omitted).

While the claimant in Martin v. Sullivan was a "self-employed musician and

bandleader," his business was incorporated and he was the president and director of

the corporation.  894 F.2d at 1521.  The court held, therefore, that the claimant was a

"wage-earning employee" because he was an officer of the corporation.  Id., at 1531.

Officers of corporations are deemed to be employees.  Pointer v. Shalala, 841 F.Supp.

201, 204 (N.D. Tex. 1993), citing 42 U.S.C. § 410(j)(1) and 20 C.F.R. §§ 404.1006,

404.1007.   Likewise, Plaintiff here is a wage-earning employee because she was an

officer of the corporation.  She was not "self-employed" despite her control of her

business.

"Wages are defined to mean all employment remuneration, irrespective of the name by which the compensation is designated or the way in which it is paid."   894 F.2d at 1531, *citing* 20 C.F.R. § 404.1041 (1985).  That regulation currently provides in part:

>    (a)   The term "wages" means *remuneration* paid to you as an employee for employment unless specifically excluded.  Wages are counted in determining your entitlement to retirement, survivors', and disability insurance benefits.
>
>    (b)   If you are paid wages, *it is not important what they are called*.  Salaries, fees, bonuses and commissions on sales or on insurance premiums are wages if they are remuneration paid for employment.
>
>    (c)   *The way in which you are paid is unimportant*. Wages may be paid on the basis of piecework or a percentage of the profits.  Wages may be paid on an hourly, daily, weekly, monthly, or yearly basis.  (See § 404.1056 for special rules for agricultural labor.)
>
>    (d)   *Your wages can be in any form*.  You can be paid in cash or something other than cash, for example, in goods or clothing.  (See paragraphs (e) and (f) of this section for kinds of employment where cash payments alone are considered wages and § 404.1043(b) concerning the value of meals and lodging as wages.)  If your employer pays you cash for your meals and lodging on a regular basis as part of your employment, these payments may be considered wages.  Payments other than cash may be counted as wages on the basis of the fair value of the items when paid.

>                          *                    *                    *

20 C.F.R. § 404.1041 (emphasis added).

The regulations place the burden of proof upon the claimant:

[A]n individual will be presumed, with respect to any month, to have rendered services for wages (determined as provided in paragraph (5) of this subsection) of more than the applicable exempt amount as determined under paragraph (8) until it is shown *to the satisfaction of the*

*Secretary* that such individual did not render such services in such month for more than such amount.  42 U.S.C. § 403(f)(4)(B) (1982) . . . .

*Id.*, at 1531 (emphasis added).  *See also* 20 C.F.R. § 404.435(e):

(e) Presumption regarding services for wages.  You are presumed to have performed services in any month for wages (as defined in § 404.429) of more than the applicable monthly exempt amount in each month of the year, until you show *to our satisfaction* that you did not perform services for wages in that month that exceeded the monthly exempt amount.

20 C.F.R. § 404.435(e) (emphasis added).  "An applicant for benefits must submit the evidence necessary to establish that all entitlement requirements are met, and failure to submit such evidence shall be the basis for the SSA to determine that the conditions for receipt of Social Security benefits have not been met.  Martin v. Sullivan, 894 F.2d at 1531-1532.

Plaintiff contends that the presumption of excess earnings established by 20 C.F.R. § 404.435(e) does not exist in this case because she demonstrated that her wages for 2001, beginning in March, 2001, were "below $700 per month and $10,680 a year."  Doc. 27, p. 5.  This is incorrect.  Plaintiff had the burden of proving the lack of excess earnings to the "satisfaction" of the Commissioner, which presumably means by a preponderance of the evidence.  A showing of wages received, standing alone, does not dispel the presumption if the showing does not satisfy the Commissioner, given other circumstances.  "The Secretary is authorized to examine the substance of business transactions and relationships in order to determine if a retired individual actually rendered substantial services while supposedly retired."  Berger v. Secretary of Health and Human Services, 835 F.2d 635, 639 (6th Cir. 1987), *citing* 42 U.S.C. § 403(f)(4)(A) & (B).  "The Secretary has, without question, the authority and the duty to

pierce any fictitious arrangements among family members, and others, to shift salary payments from one to the other when the arrangement is not in accord with reality." Martin v. Sullivan, 894 F.2d at 1533, *quoting* Gardner v. Hall, 366 F.2d 132, 135 (10th Cir. 1966).

Plaintiff is correct, however, that the standards provided in 20 C.F.R. §§ 404.446 and 404.447 for determining whether the services rendered to a business in the *self-employment* context are "substantial" do not apply to this case.  Doc. 27, pp. 1-4.  The Commissioner's regulations make a distinction between "work in self-employment" and "services for wages."  20 C.F.R. § 404.435(d) and (e).  Only the section concerning "work in self-employment" makes reference to the definitions of "substantial services" found in 20 C.F.R. § 404.446(c).  *See* 20 C.F.R. § 404.435(d).  Section 404.446(c) speaks only of "substantial services" in "trades or businesses," which is the activity of "self-employment."  20 C.F.R. § 404.435(d).  The following section (§ 404.447) elaborates upon the factors to be considered in determining whether "services are substantial," and it likewise speaks of "time devoted to trades or businesses."  20 C.F.R. § 404.447(a).  Defendant's reliance upon the standards in these regulations, doc. 22, pp. 6-7, 8-9, is improper.  In particular, the provisions in § 404.447, that presumes that services are "substantial" if more than 45 hours a month are involved, or that *skilled* services may be "substantial" even though less than 45 hours are involved, do not apply here.

Still, the standards adopted by the Eleventh Circuit for determining whether wages have been properly allocated within a family corporation rely in part upon

whether the services contributed to the corporation by the claimant have been

"substantial and valuable:"

> Concluding that the Secretary has the authority to examine substance
> over form of business transactions and relationships under the Act, the
> Sixth Circuit established the following factors for analyzing and penetrating
> the superficialities of unrepresentative family salary arrangements:
>
> > (1)   whether the claimant continues to contribute
> > substantial and valuable services to the corporation;
> >
> > (2)   whether the family member receiving the income
> > increases his or her duties commensurate with the
> > increase in salary; and
> >
> > (3)   whether the family member's income is used to
> > support the claimant.

Martin v. Sullivan, 894 F.2d at 1532, *adopting* Heer v. Secretary of Health & Human

Servs., 670 F.2d 653, 655 (6th Cir. 1982) (*per curiam*).

**Testimony at the administrative hearing on March 4, 2003**

Plaintiff testified at the administrative hearing that she has a bachelor's degree in

mathematics.  R. 46.  She and her husband started the business in question in 1969.

R. 47.  The business was converted to a regular C corporation in 1975.  *Id.*  Plaintiff now

owns 67% of the stock, and her husband owns 33%.  *Id.*

The business, which is operated out of Plaintiff's home, publishes stock market

newsletters.  R. 48.  The business has about 300 customers.  R. 49.  The business last

had employees (other than Plaintiff or her husband) in 1988.  R. 48.

Plaintiff testified that both she and her husband were trained to analyze the stock

market, but said that her husband was more current because she was "not really

watching it that closely anymore."[1]  R. 49.  All of the information is obtained from the internet.  *Id.*  Plaintiff said her husband handles the live stock trading data during the day, and she uses the end of the trading day data.  R. 50.  She said that at the end of the day, she posts data onto the company website.  *Id.*  She said it takes her 30 minutes to post eight charts at the end of the day.  R. 51.

Plaintiff said that in 1993, her husband was 65 years of age and he wanted to retire.  R. 51.  Plaintiff said that she converted the publications and did all of the programming of the computer, and she said her husband had no skills in this area.  R. 52.  She said that she "made it so that I could run the business by myself . . . ."  R. 54.  The primary services provided to the customers were timing signals, and these were to be provided by the new software program created by Plaintiff.  R. 52.  Plaintiff said that the program was complicated.  *Id.*  She said that she basically did all of the work before 1993, but her husband continued to do the payroll and sales tax work.  *Id.*  From 1993 to 1995, when the couple moved to Florida, the business was operated from an office.  R. 53.  They moved the business into their home in 1995 when they arrived in Florida.  *Id.*

Plaintiff said that while her husband was at home much of the time after 1995, he did not do any work with the business because he could not do computer programming.  R. 54.  She said she really could not say what he did during the day, except that he probably was trading stock options on his own behalf.  R. 55-56.

---

[1] Both Plaintiff and her husband have been licensed as Series II NASD securities dealers.  R. 101.

In 1999, Plaintiff installed new stock software, Trading Station, and other off-the-shelf software.  R. 57.  She also created an internet website.  R. 58.  The conversion to this new software meant that she "didn't have to be there [at the business] all day."  R. 57.  It also meant that her husband could take over the business.  R. 58.

Plaintiff said that after moving the business to the internet, the business began receiving emails and that caused there to be a new kind of work for the business, answering emails.  R. 59.  She said that in December, 1999, her husband returned to the work and began helping to answer emails and telephone calls.  *Id.*

Plaintiff said that she had no intention of applying for social security benefits until she reached age 65, but since she had cut back on her work, she decided to apply early.  R. 60.  She said that she had started having problems with her hip in the spring of 1999.  *Id.*

Plaintiff said that the corporation paid her husband deferred income in 2001.  R. 61.  This was for work from December, 1999, until March, 2001.  R. 62.

Plaintiff testified that currently, the only work that she still does that her husband cannot do is to run the accounting software, and she thought that he could do that job if she taught him how to do it.  R. 64.  She said that currently she spends about two hours a day doing work for the business.  *Id.*  She said that 72% of that is work like stuffing envelopes and doing jobs that she could delegate to an employee if there were another employee.  R. 63-64.  She said that the work that she does for the corporation is described in Exhibits 24 and 26 in the record.  R. 62, 65.  Plaintiff said that she draws $700 a month in salary based upon this work.  R. 66.  She assigned an hourly rate of $25 per hour for 12.3 of the hours that she described as skilled labor (work that she or

her husband had to do and could not be assigned to an employee) and $12 per hour for 31.4 hours that she considered to be "moderately skilled," work that could be assigned to some other employee if they had one.[2]  R. 66.  Plaintiff said that she and her husband do not charge the corporation rent or utilities, and felt that if she did, "you could take an extra $1,000 off of the salary."  R. 65.  Plaintiff agreed that the figure for the total earnings of the corporation available as salaries and relied upon by the Commissioner for the year 2001 ($45,000) was correct.  R. 49.

Plaintiff said that during a typical day, she wakes up at 3:00 a.m. and exercises for two and one-half hours.  R. 64.  She also plays golf almost every day.  *Id.*  She said she is not in the home much of the day, and goes to bed between 7:00 and 8:00 p.m.  *Id.*

Plaintiff's husband, Stanley C. Marszalk, testified that he was 74 years old at the time of the hearing.  R. 68.  When he retired at age 65, he was working as an engineer for Teledyne Corporation.  *Id.*  He said that after he retired from Teledyne, he left on an 11,000 mile, five week, motorcycle trip.  R. 69.  He said that yearly thereafter he would take a three to four week motorcycle trip.  R. 70.

Mr. Marszalk testified that he began to "ease" into working in the family business again in 1999.  R. 70.  He said that after his wife "restructured the business" he started doing emails and learning the new business.  *Id.*  He started receiving a salary from the business in 2001.  *Id.*  He began with a salary of $5,000 a month, but currently it was

---

[2] This results in wages of $684.30 for a month of such work.

$2,000 a month because of "current business conditions," that is, due to stock market declines.  R. 71.

Mr. Marszalk said he decided to become more active in the business because Plaintiff had increasing physical problems and could not sit for long in one place.  R. 71. He said that after Plaintiff retired, she continued to do some work in the business.  R. 72.  He said that she does "some accounting," "the nightly e-mail reports," and telephone reports by means of an audio recording.  *Id*.  He said that she did this work five days a week.  *Id*.  He thought that Plaintiff spent an hour, "maybe less," doing this work.  *Id*.  Mr. Marszalk said that in his work for the business he prepares the stock market commentaries, obtaining the information from a variety of sources on the internet.  R. 77.  Mr. Marszalk said that Plaintiff exercised on advice from her physician. R. 73.  She also plays golf.  R. 74.

**Other evidence of record**

For the corporate tax year 2001, which began on July 1, 2001, Plaintiff's corporation reported gross receipts and gross profits of $179,439.  R. 639.  There was a total of $102,363 of expenses that plainly were not salary items.[3]  R. 639, 645.  There was no entry for any rent expense.  R. 639.  An expenditure of $13,729 was reported for "employee benefits programs."  *Id*.  The corporation had $46,629 in cash at the beginning of tax year 2001, and $49,356 in cash at the end of the tax year.  R. 642.

---

[3] These expenses include $5,716 for taxes and licenses, $7,252 for depreciation, $10,018 for advertising, and $79,377 for other expenses itemized in statement 4.  R. 639, 645.

The return also showed an expenditure of $54,400 as "compensation of officers."  R. 639.

Plaintiff's accountant explained that Plaintiff was paid $8,400 in gross salary in tax year 2001, and her husband was paid $46,000.  R. 750.  This accounts for the expenditure of $54,400 as compensation of officers.  Plaintiff's accountant explained that the "only other benefit the Marszalks received in 2001 was $13,729 worth of joint medical benefits (i.e., approximately 25% of the Marszalk[s'] compensation)."  R. 751. This accounts for the expenditure of $13,729 for employee benefits programs.

**Legal analysis**

Defendant argues that this is a straightforward case because Plaintiff worked nearly 45 hours a month providing skilled and unskilled work.  Doc. 22, p. 8.  Defendant relies upon 20 C.F.R. § 404.447, which creates a presumption that "substantial services" have been rendered when the claimant works 45 hours or more in self-employment.[4]  As discussed above, reliance upon this regulation is not proper because Plaintiff is a wage earner, not self-employed, despite the fact that she works for a closely controlled family corporation.  Martin v. Sullivan, *supra*.  Thus, that the evidence shows that about 12 hours per month of Plaintiff's work is skilled, or that she worked about 43 hours total per month, is not, *ipso facto*, substantial evidence in the record to

---

[4] That section provides:  "Where an individual devotes more than 45 hours to all trades and businesses during a calendar month, it will be found that the individual's services are substantial unless it is established that the individual could reasonably be considered retired in the month and, therefore, that such services were not, in fact, substantial."  20 C.F.R. § 404.447(a)(2).  It also provides:  "For example, an individual who worked only 15 hours in a month might nevertheless be found to have rendered substantial services if he was managing a sizeable business or engaging in a highly skilled occupation."  20 C.F.R. § 404.447(a)(1).

show that Plaintiff did not retire.  It is some evidence, however, that Plaintiff performed

"substantial and valuable services" to the corporation to this extent.  However,

Defendant has not shown that the pay scale adopted by Plaintiff, $25 per hour for skilled

work, and $12 per hour for less skilled work, was unreasonable for the hours reported.

These wage rates are facially reasonable and result in a wage that is less per year than

the threshold amount.

The second argument presented by Defendant is that Plaintiff is "not fully

credible" because the business is operated out of Plaintiff's home, and both Plaintiff and

her husband are sole corporate officers, shareholders, and employees.  Doc. 22, p. 9.  It

is noted that Plaintiff has not moved the business out of her home, hired any new

employees, or given up majority control of the corporation.  *Id.*, p. 10.  While these

circumstances justify close scrutiny, this is not *substantial evidence*, standing alone, to

find Plaintiff to be "not fully credible."  That Plaintiff and her husband have the ability to

improperly diminish the wages of Plaintiff (in comparison to the value of her services to

the corporation) is not substantial evidence to conclude that they have in fact done so.

The third argument presented by Defendant to support the finding that Plaintiff

was not fully credible is that "tax returns suggest that the corporation remained quite

profitable in 2001 and 2002."  Doc. 22, p. 9.  The 2001 tax return shows that the

corporation had net income of $9,740 after expenses, including salaries and health

benefits, were deducted from total income.  R. 639.  This net income was reported in

the reconciliation section.  R. 642.  The net income was added to retained earnings,

making retained earnings at the end of the tax year $31,623.  *Id*.  Plaintiff's certified

public accountant explained that retained earnings of $31,623 is not profit.  It is net

worth, and consists primarily of equipment (carried on the books at $25,583).  R. 751,
642.  The corporation cannot sell its computers or other equipment to pay wages to
Plaintiff.  *Id.*  It is noted, however, that the same tax return shows $49,356 in cash held
by the corporation as an asset at the end of the tax year.  R. 642.  The increase to cash
that year, however, was only about $3,000.  *Id.*

The corporate tax return for the year beginning July 1, 2002, shows total gross
income of $164,048, expenses of $151,095, for a net income of $12,953.  R. 755.  This
increased retained earnings to $44,576.  R. 758.  The return reported $23,072 in
business assets, and cash increased to $75,595, a net increase over tax year 2001 of
about $25,000.  R. 758.

In summary, while the net income and retained earnings for tax years 2001 and
2002 do not show significant profit, the corporation held about $50,000 in cash at the
end of tax year 2001, and had $75,000 in cash at the end of tax year 2002.  This is
substantial evidence in the record to support a conclusion that the corporation was
profitable in tax year 2002, but not in 2001.  It is not, however, substantial evidence in
the record to support a conclusion, as suggested by Defendant, that it was "quite"
profitable in 2002.  Doc. 22, p. 9.  Further, this degree of profitability, an increase of
cash of $25,000 in one year, is not substantial evidence in the record to disbelieve
Plaintiff's testimony.  Profitability of this degree is reasonably supported by the evidence
supplied by Plaintiff, that she worked part time in the corporation, and that her husband,
who is equally skilled, worked quite a bit more.[5]  Further, the Commissioner has

---

[5] In tax year 2001, the corporation was still carrying a net operating loss of $28,869.
R. 646.  This puts the cash status of the corporation in better perspective.

no authority to allocate a portion of the corporation's undistributed profit and income to the claimant as remuneration for his services. . . .  [A]ccord *Herbst v. Finch*, 473 F.2d 771, 774-76 (2d Cir.1972) (holding it was improper to make excess earnings deduction where corporation did not actually or symbolically set aside funds to pay salary to claimant and neither he nor corporation contemplated payment); *Taubenfeld v. Bowen*, 685 F.Supp. 237, 240 (S.D. Fla.1988) (holding Secretary cannot allocate retained corporate earnings as additional wages to claimant); *Letz v. Weinberger*, 401 F.Supp. 598, 602 (D. Colo.1975) (holding Secretary could not allocate to claimant corporate profits of Subchapter S corporation that had not been distributed and were not available for personal use of claimant, emphasizing that remuneration must be paid by the employer and received by the employee, either actually or constructively, before Secretary can reallocate or shift salary payments).

Johnson v. Chater, 127 F.3d 756, 761 (8th Cir. 1997).  "[W]here corporate profits remain undistributed and are not available 'at any time' for the personal use of the applicant, the Secretary has no authority to allocate any portion of the funds to the applicant."  Taubenfeld v. Bowen, 685 F.Supp. 237, 240 (S.D. Fla. 1988) (citations omitted).  The third proposition, therefore, is not substantial evidence in the record to find Plaintiff to be not fully credible.

As a fourth argument, Defendant points out that one of the premises of Plaintiff's retirement decision is that she had medical problems, making it difficult to sit.  Doc. 22, p. 10.  It is argued that Plaintiff exaggerated her limitations since she exercised and played golf daily.  *Id.*  Defendant concludes:  "In other words, it does not appear that Plaintiff would be prohibited from spending 45 hours per month performing CMI-related work."  *Id.*  This is not a disability case, however.  If Plaintiff, perfectly healthy, decided to retire early, she was entitled to do so.  Moreover, the only evidence on the subject of Plaintiff's exercise is that she was attempting to maintain the health of her knees and hips.  Plaintiff's treating osteopathic physician wrote on February 20, 2003, that Plaintiff

had severe bilateral knee pain and right hip pain, with confirmation by x-ray.  R. 690.

He recommended that she move as much as possible rather than sit for a prolonged

period of time.  *Id.*  Plaintiff's chiropractor wrote on April 19, 2002, that Plaintiff had

advanced degenerative disc disease in the lower lumbar spine, and should avoid

prolonged sitting.  R. 689.  She was recommended for both right and left hip, and both

right and left knee, total replacement surgeries in 2004.  R. 753, 726.  That Plaintiff did

vigorous exercises, therefore, is not substantial evidence to support the Commissioner's

decision.

The Administrative Law Judge also mentioned the fact that Plaintiff is certified as

a Series II NASD securities dealer, and previously had a role in the corporation

researching market trends.  R. 25.  The ALJ reasoned that Plaintiff might well be doing

the same work and not reporting it.  *Id.*  Plaintiff's husband is also a certified Series II

NASD securities dealer, however.  R. 101.  This speculation, like all of the others

discussed above, is not substantial evidence in the record to determine that Plaintiff was

not credible.

The Administrative Law Judge determined as a matter of law that "the substantial

services test, as set forth in the regulations, is fully applicable to the present fact

circumstances (20 C.F.R. § 404.446(a))."  R. 26.  He also found that "any argument that

Ms. Marszalk was merely a wage earning 'employee' of CMI Business Services

represents specious reasoning."  *Id.*  This was legal error for the reasons stated above.

The Appeals Council apparently reviewed the personal and corporate tax returns

of Plaintiff, her husband, and the corporation before and after 1993, finding that while

Plaintiff worked in the corporation prior to 1993, she and her husband did not report any

corporate wages to her until her husband retired in 1993.  R. 11.  From this the Appeals Council said:  "Such methods of reporting are not merely coincidence and reflect a pattern of choosing to report based on a manner that is most financially beneficial to them and without regard to who rendered compensable services."  *Id*.  None of these personal or corporate tax returns are in the record before this court.  Thus, this finding is not supported by substantial evidence in this record.  Further, if the personal tax returns were joint returns, it seems doubtful that it mattered whether the wage income of the corporation was allocated to Plaintiff, her husband, or both, since only the total joint income was relevant for personal income tax purposes.  Likewise, only the total wages paid by the corporation would matter (as a deductible expense) for the corporate return. This finding, like the ones discussed above, is speculation, not evidence.  If Plaintiff's husband at age 65 was "burned out" from a life of work, and stepped back from work in the family corporation in 1993, as both have testified, then it matters not that this was also financially beneficial to Plaintiff and her husband with respect to his social security retirement.

All of this said, there is a troubling item not adequately addressed by the parties. One half of the employee benefits in tax year 2001 ($6,864.50)[6] might have been paid on behalf of Plaintiff as health benefits.  Wages are broadly defined to include any compensation for services in whatever form.  Payment of health benefits or other employee benefits to Plaintiff would be wages, that is, remuneration for valuable

---

[6] As noted above, the corporation paid $13,729 as employee benefits for Plaintiff and her husband in tax year 2001, and Plaintiff's accountant said that this was for health benefits.  In tax year 2002, the corporation paid $20,953 as employee benefits.  R. 755. Of this, $10,476.50 might be attributable as wages to Plaintiff.

services.  Thus, it might be concluded that Plaintiff received $15,264.50 in wages in tax year 2001 *if* it is proper to assume that one-half of the employee benefits paid by the corporation were paid on behalf of Plaintiff, to benefit Plaintiff, and are attributable to the work of Plaintiff.  In tax year 2002, in addition to the wages of $8,400, might be added one-half of the employee benefits, making Plaintiff's wages for that tax year $18,876.50, if the same assumption is correct.  Both of these amounts exceed the amounts allowable.  The retirement benefit must be reduced by one dollar for each two dollars of wages that exceed the yearly allowable amounts.  R. 23.

However, it is not clear whether an equal split of employee benefits paid by the corporation in these years is correct.  At issue would be whether there was a health care policy in the name of Plaintiff's husband for the years in question, under which Plaintiff received coverage as his spouse, whether both had policies, or whether only Plaintiff had the policy.  Also at issue is whether any other employment benefit, including direct payment of health care, was reasonably for the benefit of Plaintiff and attributable to her work for the corporation.  The nature of these employee benefits is largely unknown.  This will necessitate a remand.

On remand, it would seem only fair to permit Plaintiff to also argue whether or not the corporation should have paid her and her husband a reasonable rent for use of their home.  Presumably they own the home jointly, and thus one-half of a reasonable rent payment might offset Plaintiff's wages, reducing that amount accordingly.

**Summary**

The conclusions of the Commissioner are premised upon legal error and speculation, not substantial evidence.  Were it not for the two issues identified above, the court should reverse the decision in its entirety.  However, the case should be remanded to the Commissioner for further consideration limited to these two issues.  The court should find that Plaintiff's wages were $8,400 per year for the three relevant years except as may be modified to account for employee benefits and a reasonable rent.  On remand, the burden of proof remains upon Plaintiff.

Accordingly, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's decision, find that Plaintiff's wages for the three relevant years was $8,400 per year without accounting for employee benefits or rent, and **REMAND** to the Commissioner for further consideration limited to employee benefits and rent.

**IN CHAMBERS** at Tallahassee, Florida, on February 9, 2006.


**s/    William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**